BRIAN R. BLACKMAN (SBN 196996)
bblackman@blaxterlaw.com
J.T. WELLS BLAXTER (SBN 190222)
wblaxter@blaxterlaw.com
DAVID P. ADAMS (SBN 312003)
dadams@blaxterlaw.com
BLAXTER | BLACKMAN LLP
601 California Street, Suite 1505
San Francisco, California 94108
Telephone:    (415) 500-7700
Facsimile:    (415) 766-4255

Attorneys for Plaintiff COSTCO
WHOLESALE CORPORATION

UNITED STATE DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COSTCO WHOLESALE CORPORATION, a Washington corporation;<br><br>Plaintiff,<br><br>v.<br><br>DIRECT ACTION EVERYWHERE, a California corporation; DIRECT ACTION EVERYWHERE SF BAY AREA, an unincorporated association; CASSIE KING, an individual; ALMIRA TANNER, an individual; and WAYNE HSIUNG, an individual;<br><br>Defendants. | Case No.  19-cv-7418<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Costco Wholesale Corporation alleges:

**The Parties**

1. Plaintiff Costco Wholesale Corporation ("Costco" or "Plaintiff") is a Washington corporation with its principal place of business at 999 Lake Drive, Issaquah, Washington 98027.

2. Plaintiff is informed and believes that defendant Direct Action Everywhere ("DxE") is a nonprofit corporation organized and existing under the laws of the State of California with its principal offices located at 25 The Plaza Drive, Berkeley, California 94705.

3. Plaintiff is informed and believes that defendant Direct Action Everywhere SF Bay Area ("DxE SF Bay Area") is an unincorporated association based in Alameda County, California with its headquarters located at 25 The Plaza Drive, Berkeley California 94705.  DxE SF Bay is the local Bay Area chapter of the larger DxE organization.  Plaintiff is informed and believes that none of DxE SF Bay Area's members are citizens of the State of Washington.

4. Plaintiff is informed and believes that defendant Almira Tanner is a citizen of Canada, residing in Santa Clara County.  Ms. Tanner is an officer of DxE, the Lead Organizer for DxE SF Bay Area, and a member of DxE SF Bay Area's Core.  Plaintiff is informed and believes that the "Core" is responsible for the day-to-day operational decisions of DxE SF Bay Area.

5. Plaintiff is informed and believes that defendant Cassie King is an individual, residing in Alameda County.  Ms. King is a member of DxE SF Bay Area's Core.

6. Plaintiff is informed and believes that defendant Wayne Hsiung is an individual, residing in Alameda County.  Mr. Hsiung is an officer of DxE and co-founder of DxE SF Bay Area.  He formerly served as the Lead Organizer for DxE SF Bay Area and as a member of its Core.  He resigned these positions on or about September 1, 2019.  Mr. Hsiung is currently an Organizer for DxE SF Bay Area.

7. Defendants DxE, DxE SF Bay Area, Tanner, King and Hsiung (collectively "Defendants" or "Trespassers") have engaged and continue to engage in unlawful trespass activity inside and in front of Costco warehouse stores in California, including the store located 450 10th Street, San Francisco, California.

8. Plaintiff brings this action to assert and defend its right to manage, control and operate its business on company property, including inside its warehouse stores, store entrance and exit areas, walkways and company owned parking lots, free from Defendants' repeated and continuing trespasses and other unlawful conduct.

**Jurisdiction and Venue**

9. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because the amount in controversy exceeds $75,000, exclusive of interest and costs, and there is complete diversity of citizenship between Plaintiff and Defendants.

10. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because DxE and DxE SF Bay Area, on information and belief, both reside in Alameda County, within the Northern District of California, and because Defendants have committed repeat trespasses in the City and County of San Francisco, which is also located within the Northern District of California.

**Intradistrict Assignment**

11. Assignment of this matter to the San Francisco division is proper, Defendants have engaged in repeated trespasses at the Costco warehouse store in San Francisco.

**General Allegations**

12. Plaintiff operates Costco warehouse stores in the State of California, and across the United States. Plaintiff has a right to lawful possession of their warehouse stores as either owner or lessee with the right to exclude.

13. The Costco warehouse stores are membership clubs, and are not open to the general public. To enter a Costco warehouse store, members must present a valid Costco membership card. Memberships are available to qualifying individuals over 18 years old, with payment of an annual fee. Costco reserves the right to refuse membership to any applicant and membership may be terminated at Costco's discretion and without cause. Membership is subject to any and all rules adopted by Costco.

14. The Costco warehouse stores are not public forums, and neither the general public nor Costco's members are invited to the warehouses for any purpose other than buying the goods and services that are offered for sale in the warehouse stores. The primary purpose of Costco

warehouse stores is to sell food and home products, and other related items to members who visit the stores.

15. Costco warehouse stores contain food courts for members to purchase prepared meals provided at reasonable prices. Costco's food courts provide some limited seating for members to eat food items they have purchased at the stores. These are minor conveniences offered to members when they come to shop.

16. While there are architectural differences among the Costco warehouse stores, the individual stores are, generally speaking, located in standalone commercial properties or retail shopping centers. The individual stores usually have one entrance providing access to the warehouse from a parking area and exits that lead back to the parking area from the same point of egress. The warehouse stores and adjacent parking areas are either owned or leased by Costco.

17. Costco wants to provide a comfortable and safe shopping experience for their members that is free from disruption and intimidation. Costco has adopted an Expressive Activity Policy that prohibits the use of the premises of any Costco warehouse store in the State of California for expressive activity.

18. As described in more detail below, Defendants have repeatedly entered Costco warehouse stores across California to speak on a variety of issues they contend are related to animal agriculture and Costco's sale of food products. They often use amplification, video, signage and physical demonstrations as part of their protesting activities. They regularly block or obstruct access to the stores' meat cases and dairy shelves as part of their trespassing activities. They have also used the areas in front of the warehouse stores' entrances and exits to engaged in their trespass activity.

19. For the last several years, Defendants have trespassed and continue to trespass on Plaintiff's property. Defendants' trespassing activities have escalated over time and become more and more frequent. Recent examples of these acts of trespass include the following:

    a. In August 2016, Costco employees at the Costco warehouse store located at 450 10th Street in San Francisco, California (the "San Francisco Warehouse") learned DxE SF Bay Area was planning a demonstration at the San Francisco Warehouse on August 23, 2016.

1  When the warehouse opened on August 23, store management directed additional personnel to
2  check membership cards as members entered the warehouse.  Around mid-day, Costco personnel
3  began finding hazmat suits and DxE signs in backpacks and purses of certain individuals
4  attempting to gain entrance to the warehouse.  These persons were not allowed into the warehouse.
5  Despite these efforts, roughly thirty-five (35) DxE protesters were able to access the warehouse
6  and assembled in the store's meat department.  The protesters laid down on the floor of the meat
7  department, blocking members from accessing the meat cases.  Other DxE protesters filmed the
8  event.  Management decided to close the store's entrance to prevent additional protesters dressed
9  in hazmat suits from entering the store.  During this time, the protesters in the meat department
10 gave several amplified speeches.  Once the speeches were complete, the protesters marched
11 through the store towards the exits, stopping along the way to make several additional speeches.
12 After exiting the warehouse, the protesters joined other DxE protesters assembled on the store's
13 landing area immediately outside of the entrance and exit to the warehouse.  This larger group of
14 roughly 60 to 70 DxE protesters continued to give speeches on the store's landing area.
15 Management again requested the protesters leave, but were told the protest would end when the
16 speeches were concluded.

17    b. On or about October 1, 2016, approximately 80 DxE SF Bay Area
18 protesters entered the San Francisco Warehouse and surrounded several meat cases in the meat
19 department.  The protesters again blocked access to the meat cases and made numerous loud
20 speeches.  The protesters also publicly eulogized the fish and meat for sale.  Many of the
21 protesters placed white flowers on the meat and fish.

22    c. On or about July 6, 2017, approximately 20 protesters assembled in a long
23 line in front of the San Francisco Warehouse's meat department.  Most protesters held signs, while
24 some held up hands that were stained red with fake blood.  Defendant Hsiung, whom Plaintiff is
25 informed and believes was the Lead Organizer for DxE SF Bay Area at the time, stood in front of
26 the line of protesters and used an amplified bull horn to project DxE rhetoric throughout the store.
27 The protesters were asked to leave but only did so after the speeches and demonstrations were
28

-4-

COMPLAINT

complete. The protesters continued to shout slogans, draw attention and display their signs as they slowly moved through the store to exit.

   d. On or around May 9, 2018, roughly 22 protesters entered the San Francisco Warehouse, setup a camera in the meat department and proceeded to put on a demonstration where one protester dressed in a suit interviewed another protester dressed to look similar to a Costco employee. The protesters were asked to leave but refused. Store management called the police. As the demonstration inside the warehouse continued, another protester wearing a suit and a wig, in an evident parody of President Donald Trump, joined the interview and handed a large novelty-sized check to the red shirted man. After this check ceremony, the other protesters gathered around and held up signs while chanting various DxE slogans. Once the demonstration was completed the protesters slowly exited the warehouse while continuing to chant and brandish their signage. After exiting the store, the protesters gathered on the store's entrance landing and continued to draw attention to themselves. The police arrived but refused to arrest the DxE protesters saying it was unsafe to do so.

   e. In or about August 2018, defendant King entered a Costco warehouse store and conducted a protest demonstration in the meat department while being filmed by another protester. As part of the demonstration, defendant King gave a loud speech in protest of Costco and its meat suppliers, covered herself in fake blood, climbed into a refrigerated meat case and laid down on top of the refrigerated meat.

   f. On December 24, 2018, approximately twenty-five (25) protesters entered the San Francisco Warehouse and gathered in the meat department. Several of the protesters sat down in the aisles between the refrigerated meat cases and one protester used a bull horn to give an amplified speech. The protesters also used an easel to display pictures and text accompanying the speech. Store management asked the protesters to leave, but they refused until the police arrived in response to management's call. The protesters' presence in the meat department, and obstruction of the aisles, impeded many members from shopping and undoubtedly had a negative effect on the store's sales. December 24th is Christmas Eve and one of Costco's busiest days. Though all DxE protests disrupt Costco's business operations, December's protest had an even

-5-

greater impact due to the high volume of last-minute holiday shoppers whose shopping experience was impaired by DxE's activities.

        g.      More recently on January 31, 2019, several DxE protesters gathered at the San Francisco Warehouse's egg cooler to protest allegations of animal mistreatment by Costco's poultry suppliers. Several protesters donned white biohazard suits and facemasks, and used caution tape to close off the entrance to the egg cooler aisle. One protester used a loud high-pitched whistle to get the attention of the Costco members in the area as others stood by holding signs bearing DxE slogans. The protesters refused to leave when asked and took turns using a microphone and speaker to give speeches to the surrounding members. Each speech was punctuated by a loud round of chanting by the protesters. One protester used a phone to live stream the entire event. After concluding their speeches, the protesters slowly filed out of the store and continued to chant and draw attention to themselves. Upon exiting the store, the protesters assembled on the third floor of the parking garage looking down over the store's entrance and landing area. The protesters hung a banner from the garage railing, and another protester used a microphone to give a speech. The police arrived and spoke with the protesters, and after several minutes the protesters finally left the property.

        h.      Most recently, on August 6, 2019, approximately 12 DxE protesters, including defendants King and Tanner, gathered in the San Francisco Warehouse's meat department. The protesters donned white biohazard suits and surrounded the meat coolers. At least two of the protesters were covered in fake blood and climbed into the meat coolers where they laid down on top of the refrigerated meat. The white-suited protesters then covered their prone companions in empty pill bottles. Several protesters gave speeches. The protesters were asked to leave but refused at which point store management called the police. A DxE protester filmed the demonstration and spoke into her phone while live streaming the protest. After concluding their speeches, the bloody protesters climbed out of the meat case as the other protesters chanted. The protesters then proceeded to leave the store while continuing to chant and hold signs reading, "What is Costco's Bloody Secret?" After exiting the store, the protesters gathered on the landing area to continue giving speeches as the recently arrived police watched

-6-

COMPLAINT

from several feet away.  After several minutes, the protesters left the property and continued to chant as they walked down 10th Street.

20. Defendants have conducted similar protest and demonstration activities inside Costco warehouse stores in San Jose, Great Oaks, Burbank and Mission Valley.

21. The effect of Defendants' conduct, as described above, has been to prevent or obstruct Plaintiff's employees and members ingress to and egress from the Plaintiff's property, to prevent Plaintiff's members from selecting their grocery and merchandise items and to prevent Plaintiff's members from purchasing these items.  Further, incidents such as those at the San Francisco Warehouse, in which DxE members laid down inside the meat cases with the refrigerated meat intended for sale, create dangerous situations and risk the safety of Costco employees, members, and the DxE protesters themselves.

22. Plaintiff's members have voiced concerns over and complained about the protest activities inside the stores.  There also have been confrontations between members and DxE protesters.

23. Plaintiff is informed and believes, based on Defendants' pattern of conduct that Defendants will continue to engage in this unlawful activity inside Plaintiff's stores and on its property.

24. Defendants threaten and assert that they will continue to trespass, and therefore continue to deprive Plaintiff of its right to exclusive possession of its property.  Plaintiff is informed and believes, and on the basis of that information and belief alleges that unless restrained by this Court, Defendants will continue to trespass on Plaintiff's property and inside of its warehouse stores.  Such trespassory conduct by Defendants will result in irreparable harm to Plaintiff, in that Plaintiff's employees and members will be prevented or obstructed from entering and exiting Plaintiff's property, Plaintiff's members will be prevented or obstructed from selecting and purchasing their grocery and other merchandise items, Plaintiff's employees and members' safety will be put at risk, and Plaintiff will suffer the loss of member and employee goodwill.  The potential damages that could proximately result from Defendants' continued trespass would be extremely difficult, if not impossible, to assess accurately.

-7-

COMPLAINT

25. Defendants' continuing trespassory conduct, as alleged in this Complaint, will require Plaintiff to bring a multiplicity of actions to protect Plaintiff's property interests, thereby rendering Plaintiff's remedy at law inadequate.

## FIRST CLAIM FOR RELIEF

**(Declaratory Relief against All Defendants)**

26. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint.

27. Costco owns or has the right to possession and control over its warehouse stores, the areas immediately in front of its warehouses and the parking lots that it owns or leases. Costco has the right to prohibit altogether or impose reasonable time, place and manner restrictions on those who wish to solicit on Plaintiff's property. Plaintiff's rules governing expressive activity, i.e., accessing Plaintiff's property for purposes other than shopping, are lawful and anyone failing to comply with those rules has trespassed upon Plaintiff's property.

28. Defendants disagree with Plaintiff and assert that they may lawfully come upon Plaintiff's property to engage in demonstrations and other protests activities for any other purpose they wish without regard to Plaintiff's right to possession and control over its warehouse stores, entrance and exit areas, and parking lots.

29. Plaintiff desires a judicial declaration of its rights and duties and a judicial declaration that they may prohibit Defendants and those acting in concert with them from using Plaintiff's property for demonstrations and other protest activities.

30. A judicial declaration is appropriate at this time because of the continuing nature of Defendants' actions and their threatened future activity. Such a declaration will clarify Plaintiff's rights and will assist it when requesting law enforcement assistance in the future.

## SECOND CLAIM FOR RELIEF

**(Trespass against All Defendants)**

31. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint.

32. Plaintiff has lawful possession of its property as either property owner or lessee with the right to exclude.

33. On repeated past occasions and continuing to present, Defendants entered Costco warehouse stores in California, including the San Francisco Warehouse, without Plaintiff's invitation or permission and over its express objections.

34. Defendants have repeatedly entered Costco warehouse stores in California, including the San Francisco Warehouse, in excess of the limited invitation for members to buy the goods and services that are offered for sale in the stores, have obstructed Plaintiff's employees and members' ingress and egress, obstructed members from selecting and/or purchasing their items, risked the safety of Plaintiff's employees and members (as well as their own safety) and caused a loss of member goodwill.

35. Defendants have refused to leave Plaintiff's warehouse stores when asked to do so.

36. Defendants' activities in Plaintiff's warehouses constitute unlawful trespass.

**THIRD CLAIM FOR RELIEF**

**(Injunctive Relief against All Defendants)**

37. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint.

38. Plaintiff has the right to control the inside and outside of its Costco warehouse stores on which Defendants have trespassed and continue to trespass, and has the right to protect against Defendants' trespassing and interfering with Plaintiff's use of its property.

39. As a proximate result of Defendants' trespasses, Plaintiff has suffered and will suffer substantial and irreparable damage.

40. Unless restrained and enjoined by order of this Court, Defendants' unlawful trespass will continue and Plaintiff will suffer irreparable harm and will be faced with potential damages from lost sales and the loss of goodwill of its members, who may be subjected to harassment by Defendants, or those acting in concert with them, or who may be deterred from entering a Costco warehouse store or making a purchase, or whose safety may be put at risk as a consequence of the presence and unlawful activities of Defendants on Plaintiff's property.

Plaintiff will also suffer from continuous disruptions to its operations and productivity to address the coordinated trespasses of the Defendants, which will otherwise require Plaintiff to file successive legal actions for each new act of trespass.

41. Plaintiff has no adequate remedy at law.

42. Greater injury will be inflicted upon Plaintiff by the denial of a permanent injunction than will be inflicted upon Defendants by the granting of such relief.

## PRAYER FOR RELIEF

Wherefore, Plaintiff requests judgment against Defendants, and each of them, as follows:

1. The Court declare that Plaintiff has the right to prohibit Defendants and those acting in concert with them from accessing or using its property as a forum for public expression;

2. For a preliminary injunction and a permanent injunction, enjoining Defendants, their agents and those acting in aid or concert with them who have knowledge of said injunction from using or attempting to use Plaintiff's property as a forum for the expression of their views;

3. For general damages in an amount to be proven at trial;

4. Costs of suit; and

5. Any other and further relief that the Court considers proper.

Dated: November 11, 2019

BLAXTER | BLACKMAN LLP

By:    */s/ Brian R. Blackman*
BRIAN R. BLACKMAN
DAVID P. ADAMS
Attorneys for
COSTCO WHOLESALE CORPORATION

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all issues triable by a jury.

Dated:  November 11, 2019

BLAXTER | BLACKMAN LLP

By: */s/ Brian R. Blackman*
BRIAN R. BLACKMAN
Attorneys for
COSTCO WHOLESALE CORPORATION